**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FENGHUI  FAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-3524 |
| | § | |
| VICKI BREWER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Fenghui Fan, proceeding *pro se* and *in forma pauperis*, filed this action against Vicki Brewer, the Primary Designated Signatory Officer ("PDSO") for international students enrolled at the University of Texas Medical Branch at Galveston ("UTMB").  Fan was a student in the Cellular Physiology and Molecular Biophysics (CPMB) graduate program at UTMB from approximately 2005 to 2007.  In his twenty-nine page complaint and supplemental complaint, which is often difficult to follow, Fan complains that he was wrongly dismissed from the graduate school at UTMB.  As a result, he had to abandon his efforts to obtain a Ph.D in the United States, his visa was revoked, and he has returned to his homeland, China.

Fan admits that he received two unsatisfactory grades and failed to meet UTMB's requirements for continued study.  He refers to numerous hearings that were held to evaluate his performance and his failures to follow and meet the school's requirements and protocols.  He describes the numerous decisions made by the UTMB faculty as violations of the "Equal Opportunity Act" and "a kind of abuse on me for academic excellence."  Fan was expelled from graduate school in late 2007.

1

Fan asserts that he was an excellent, published scientist and that the basis for his termination was not due to academic deficiencies.  (Docket Entry No. 1, pp. 5-8).  Instead, he alleges, his termination resulted from the personal animus of faculty members towards him and the university's alleged inability to find a lab suitable for his scientific specialty.  *Id*. at 4, 8.   Fan asserts the following causes of action: (1) issuance of a fraudulent grade; (2) negligence by UTMB; (3) defamation; and (4) violation of the "Equal Opportunity Act."  Fan seeks the following relief:[1]

1.  reinstatement as a full-time graduate student at UTMB;

2.  change of two grades from unsatisfactory ("U") to satisfactory ("S");

3.  an updated Student and Exchange Visitor Information System ("SEVIS") status from dismissed to transferred;[2]

4.  enrollment in "F-1 Administration and Law" at UTMB;

5.  a $5,000 stipend pro-rated from January16, 2008;

6.  $500,000 in compensatory damages if he is not reinstated as a UTMB graduate student; and

7.  an order requiring UTMB  to "conceal all their decisions related to my dismissal and expunge."[3]

Brewer has moved to dismiss Fan's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject- matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. (Docket Entry No. 13).  Fan has objected to the motion to dismiss with the same arguments presented in his complaint.  (Docket Entry No. 27).  Fan has also filed a number of motions,

---

[1]   Docket Entry No. 1, p. 18.

[2]   The U.S. Immigration and Customs Enforcement agency requires that changes in the enrollment status of foreign students be reported in the Student and Exchange and Visitor Information System.  (Docket Entry No. 13, Exh. A).

[3]   Docket Entry No. 1, p. 10.

including motions to proceed *in forma pauperis*, motions for entry of default against Vicki Brewer (Docket Entry No. 15, 17, 19, 25, 35, 36, and 37), and motions to add UTMB and David Callendar, Cary Cooper, and Dorian Coppenhaver as defendants (Docket Entry No. 30).

Based on a careful review of the motions, the response, the record, and the applicable law, this court grants Brewer's motion to dismiss; denies Fan's motions for default;[4] denies Fan's motion for leave to amend; and, by separate order, dismisses this case. The reasons are explained below.

## I.  The Motion to Dismiss

### A.  The Legal Standard

#### 1.  Rule 12(b)(6)

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007), the Supreme Court clarified the standards that apply to a Rule 12(b)(6) motion to dismiss. The Court stated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007).

In *Ashcroft v. Iqbal*, — S. Ct. ---, No. 07-1015, 2009 WL 1361536 (May 18, 2009), the

---

[4]

 Fan's repeated motions for default against Brewer are frivolous and abusive. A party is not entitled to a default judgment as of right; rather the entry of default is left to the sound judicial discretion of the district court, with a preference for disposal of cases on the merits whenever possible. F.R.C.P. 55(a); *see* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2685, p. 34-35 (2004). A court may consider whether the default is largely technical and whether plaintiff has been substantially prejudiced by the delay involved. Brewer filed a motion to dismiss one day past the deadline in which to file an answer. Brewer had meritorious responses to Fan's claims. There is no prejudice to Fan from the one-day delay. The motions for default are denied.

Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained

that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 2009

WL 1361536, at  *12 (citing *Twombly*, 550 U.S. at 555).  With respect to the "plausibility" standard

described in *Twombly*, *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The *Iqbal* Court noted

that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 557).

    The *Iqbal* Court explained that two separate principles formed the basis for its *Twombly*

decision:

> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.  Rule 8 marks a notable
> and generous departure from the hyper-technical, code-pleading
> regime of a prior era, but it does not unlock the doors of discovery for
> a plaintiff armed with nothing more than conclusions.  Second, only
> a complaint that states a plausible claim for relief survives a motion
> to dismiss.  Determining whether a complaint states a plausible claim
> for relief will . . . be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense.
> But where the well-pleaded facts do not permit the court to infer
> more than the mere possibility of misconduct, the complaint has
> alleged—but it has not "show[n]"—"that the pleader is entitled to
> relief."

*Iqbal*, 2009 WL 1361536, at *13 (internal citations omitted).  The Court set forth a framework for considering motions to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

In accordance with the pleading principles described in *Twombly* and *Iqbal*, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do' . . . ." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965); *see also Iqbal*, 2009 WL 1361536, at *12 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 2009 WL 1361536, at *12 (quoting *Twombly*, 550 U.S. at 557).  "'Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.'" *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (unpublished) (per curiam) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965 n.3).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964–65);

*see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S.

544, 127 S. Ct. at 1965), *cert. denied*, *S. Scrap Material Co. v. United States*, 129 S. Ct. 1669

(2009). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim

of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting

*Twombly*, 550 U.S. 544, 127 S. Ct. at 1966).

### 2.        Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter

jurisdiction. "A case is properly dismissed for lack of subject-matter jurisdiction when the court

lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss.,*

*Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The plaintiff bears the burden of

demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521,

523 (5th Cir. 1981). "Courts may dismiss for lack of subject-matter jurisdiction on any one of three

bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d

404, 413 (5th Cir. 1981))

In making a factual determination regarding subject-matter jurisdiction under Rule 12(b)(1),

which does not implicate the merits of a plaintiff's cause of action, the district court has substantial

authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case."

*Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798

F.2d at 741. The court has wide discretion to allow affidavits, other documents, and a limited

evidentiary hearing to resolve jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. The court may consider matters outside the pleadings, such as testimony and affidavits to determine subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *See Garcia*, 104 F.3d at 1261.

> **B.     The Claims Against Brewer**

The claims against Brewer must be dismissed under both Rule 12(b)(1) and Rule 12(b)(6). Fan sued Brewer in her official capacity as Primary Designated Signatory Officer for UTMB. Because Brewer was sued in her official capacity, the suit is treated as one against the State of Texas. An official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "State officials are immune under the Eleventh Amendment when they are sued in their official capacities." *Hines v. Texas,* 76 Fed. App'x 564, 566 (5th Cir.2003) (per curiam) (citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). "The Eleventh Amendment secures the states' immunity from private suits for monetary damages filed in federal court." *Neinast v. Texas,* 217 F.3d 275, 280 (5th Cir.2000). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72-76, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), and the State may waive its immunity by consenting to suit, *AT & T Communications v. BellSouth Telecom. Inc.,* 238 F.3d 636, 643 (5th Cir.2001), Texas has not waived its immunity by consenting to suit nor has Congress abrogated the State's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). An Eleventh Amendment sovereign

immunity defense challenges a court's subject-matter jurisdiction. *See Ussery v. Louisiana,* 150 F.3d 431, 434 (5th Cir.1998). A federal court does not have subject-matter jurisdiction to hear claims that are barred by the Eleventh Amendment.

Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacity. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 609 n. 10 (2001) (recognizing that "States and state officers acting in their official capacity are immune from suits for damages ..."). The Eleventh Amendment bars Fan's claims for monetary damages from Brewer in her official capacity. Nor can Fan obtain retrospective injunctive relief. Eleventh Amendment immunity also applies to the state-law claims Fan asserts in this federal case. *Pennhurst State School & Hospital v. Halderman ,* 465 U.S. 89,121 (1984). This is true even if the State has waived sovereign immunity to such claims in state court. *Sherwinski v. Peterson,* 98 F.3d 849, 851-852 (5th Cir.1996) ("[a] state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts").

There is a narrow exception to Eleventh Amendment immunity for suits brought against individuals in their official capacity, as agents of the state or a state entity, if the relief sought is injunctive in nature and prospective in effect. *See Aguilar v. Texas Dept. of Criminal Justice,* 160 F.3d 1052, 1054 (citing *Ex parte Young,* 209 U.S. 123 (1980)). As explained below, Fan's complaint fails to allege any constitutional violation. As a result, he fails to state a claim against Brewer in her official capacity. 28 U.S.C. § 1915(e)(2)(B).[5]

---

[5] . In her affidavit, Brewer states that she has no decision-making authority to change students' grades or to dismiss or readmit students. She further states:

To the extent Fan sues Brewer in her individual capacity, the absence of allegations showing a connection between Brewer and Fan's expulsion from the program requires dismissal.  Fan has failed to allege facts showing that Brewer had personal involvement in the events that are the basis of the claims he asserts in this suit.  Brewer cannot be held liable unless her own individual actions violated the Constitution.  *See Iqbal,* 2009 WL 1361536 at 15; *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).  Fan's complaint alleges only that Brewer was responsible for the change in his SEVIS rating.  Fan has failed to allege facts that would allow a court to find that Brewer violated Fan's constitutional rights.

## II.   Leave to Amend

### A.    The Legal Standard

Because Fan's claims against Brewer are dismissed, it is necessary to determine whether to allow leave to amend.  When a plaintiff's complaint fails to state a claim, a court should give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless amendment would be futile.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at

---

> I had no involvement or participation whatsoever in the decision to expel Fenghui Fan as a student from UTMB.  Additionally, I lacked the discretion or authority to retain Fenghui Fan as a student once the decision to expel him had been made.  In fact, as the PDSO for international students on F-1 Visas at UTMB, my only involvement was to fulfill my obligation required by U.S. Immigration and Customs Enforcement to immediately report Mr. Fan's dismissal (i.e. his change of status) in the Student and Exchange Visitor Information System ("SEVIS").  I fulfilled this reporting obligation upon receiving notice from the Graduate School of Biomedical Sciences that Mr. Fan had been dismissed and had exhausted all appeals.

(Docket Entry No. 13, Exh. A.)

least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted).  A plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face. . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (unpublished) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'") (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)).

        In addition to determining whether to allow Fan to amend his complaint against Brewer, this court must also rule on Fan's motion to amend his complaint to add the following defendants: UTMB; David Callender, President of UTMB; Cary Cooper, Dean of the UTMB Graduate School; and Dorian H. Coppenhaver, Associate Dean of the UTMB Graduate School.  (Docket Entry No. 30).  Fan's motion for leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides as follows:

> A party may amend the party's pleadings once as a matter of course before being served with a responsive pleading; or within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.  In all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave.  The court should freely give leave when justice so requires.

10

FED.R.CIV.P. 15(a).  In considering a motion to amend a complaint, the district court may consider, among other factors, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Stripling v. Jordon Prod. Co.,* 234 F.3d 863, 872-73 (5th Cir. 2000) (amendment should be denied if futile).

### B.    Analysis

The case law makes it clear that amendment of the complaint against Brewer would be futile and that Fan cannot allege a claim against the proposed additional defendants over which there would be federal subject-matter jurisdiction or on which he could recover.  As a result, no opportunity is provided to amend the complaint allegations as to Brewer and the motion for leave to amend to add parties is denied.

As with the official-capacity claims against Brewer, the proposed claims for damages and retrospective injunctive relief against UTMB and the official capacity claims against the proposed additional individual defendants, all employees of UTMB,  are barred by the Eleventh Amendment. The University of Texas Medical Branch is undoubtedly an agency of the State of Texas.  *See Combs v. Valdez,* 2005 WL 2291626 *1 n. 2 (N.D. Tex.2005); *University of Texas Medical Branch at Galveston v. Bagg,* 726 S.W.2d 582, 584 (Tex. App.-Houston [14th Dist.] 1987, writ ref.'s n.r.e.). Fan's claims against the UTMB defendants in their official capacities as employees of the University of Texas Medical Branch are barred by the Eleventh Amendment and must be dismissed for lack of subject-matter jurisdiction.  *See Combs,* 2005 WL 2291626 at *3.

The claims for reinstatement and other relief against the individual defendants in their

individual capacities are clearly without merit and must be dismissed with prejudice under Rule 12(b)(6). The additional proposed individual defendants are all members of the UTMB faculty involved in the decisions about Fan's work. In *Board of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Supreme Court upheld against a due process challenge of the termination of a medical school student whose performance of duties was rated inadequate by the school staff. The Court emphasized its reluctance to "ignore the historical judgment of educators and thereby formalize the academic dismissal process by requiring a hearing." 435 U.S. at 90, 98 S.Ct. at 955. Moreover, the Court recognized that the complexity of the student-faculty relationship increases "as one advances through the varying regimes of the educational system." *Id.* Rather than decide expressly whether the plaintiff had a protected liberty or property interest in her graduate medical education, the Court assumed the existence of some such interest and held that the student received all that the Fourteenth Amendment requires where "the school fully informed [her] of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment." *Horowitz*, 435 U.S. at 85, 98 S.Ct. at 952. The Fifth Circuit followed *Horowitz* in a case in which a dental resident was dismissed for performance deficiencies. In *Davis v. Mann*, 882 F.2d 967, 973-74 (5th Cir.1989), the Fifth Circuit observed that "[c]ourts overwhelmingly agree that students, whether dismissed for academic or disciplinary reasons, are not entitled to as much procedural protection under the Fourteenth Amendment as employees who are terminated from their jobs." It was sufficient that the student in *Davis* received ample notice of the charges against him and a warning of the consequences that would follow his failure to improve performance.

Assuming, without deciding, that Fan had a protected liberty or property interest in his

graduate studies that was subject to due process protection, the complaint shows that, as a matter of law, there was no due process violation.  *See Horowitz*, 435 U.S. at 92. ("We need not decide, however, whether respondents' dismissal [from medical school] deprived her of a liberty interest in pursuing a medical career . . . . Assuming the existence of a liberty or property interest, respondent has been awarded at least as much due process as the Fourteenth Amendment requires."); *see also,  Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

 Alleged due process violations in academic disciplinary decisions are subject to a narrow judicial review.  Procedural due process in the context of college or graduate school discipline requires only an "informal give-and-take between the student and the administrative body dismissing him that would, at a minimum, give the student "the opportunity to characterize his conduct and put it in what he deems the proper context."  *Goss v. Lopez*, 419 U.S. 565, 584 (1975).  Decisions that are based on scholarly or academic criteria require even less stringent procedural requirements.  If the student is fully informed of the faculty's dissatisfaction with his progress, and the ultimate decision to dismiss him is careful and deliberate, no hearing before the academic decision maker is required.  *Horowitz*, 435 U.S. at 84-86.  Due process does not require that the student be present when the decision is made, or that he be able to question witnesses, or that he be allowed to present his side of the story.  *Id.*; *Davis,* 882 F.2d at 974-75.

Fan's complaint shows that as a matter of law, he was accorded all the required procedural protections and  received all the due process required by the Constitution.  The facts that Fan alleges show that the ultimate decision to dismiss him was based on the academic judgment of school officials that he did not have the necessary ability to perform adequately.  *Horowitz,* 435 U.S. at 89-90, 98 S.Ct. at 955.  The facts show that the decision made to dismiss Fan was careful and

deliberate.  The courts have made it clear that a judge may not override the faculty's academic and professional judgment about a student's performance in a graduate program unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.  *Ewing,* 464 U.S. at 225.  When a reviewing court has found even minimal evidence of "professional judgment," that is sufficient to justify judgment against a student plaintiff as a matter of law.  *See e.g., Levi v. University of Texas at San Antonio*, 840 F.2d 277, 280 (5th Cir. 1988); *Clements v. Nassau County*, 835 F.2d 1000, 1005-05 (2d Cir. 1987) (in cases involving academic decisions, the university is entitled to judgment as a matter of law if there is evidence of a rational basis for the decision).  If the allegations or evidence show that the academic discipline resulted from  professional judgment and had a rational academic basis, the substantive due process inquiry ends.  The facts Fan alleges show that the decision to expel him was neither arbitrary nor capricious, or "such a substantial departure from accepted academic norms" as to conclusively demonstrate that no professional judgment was exercised.

The facts Fan alleges also show that he received sufficient procedural protection.  Even for dismissals from graduate programs based on disciplinary or academic reasons, the procedural due process required is "an 'informal give-and-take' between the student and the administrative body dismissing [her] that would, at least, give the student 'the opportunity to characterize [her] conduct and put it in what [she] deems the proper context.'" *Horowitz,* 435 U.S. at 85-86, 98 S.Ct. 953 (quoting *Goss,* 419 U.S. at 584, 95 S.Ct. 729).  The facts Fan alleges show that he received ample procedural protection.   In his complaint, Fan recalls at least two hearings regarding his academic performance.  He states:

1. One hearing committee member asked me in the hearing "Did you completed [sic] that research rotation project in a lab or not...?... After the hearing, I sent email to the UTMB Graduate School Dean on that grade. . . . (Docket Entry No. 1 at 7);

2. Two hours after my 2007 research rotation appeal hearing on Jan. 16, 2008, UTMB Graduate School held my academic dismissal appeal hearing. I was announced "academically dismissed by UTMB Graduate School because I got 2 "U" for my research rotations." *Id*. at 8.

3. After my Fall of 2007 research rotation grade appeal hearing and my academical [sic[ dismissal appeal hearing. . . ." *Id.*

The facts Fan alleges in the complaint demonstrate that he received the substantive and procedural process he was due under *Horowitz* and subsequent cases. The graduate school committee fully informed Fan of the faculty's dissatisfaction with his progress and took appropriate steps towards his dismissal. Indeed, Fan admits in his complaint that the graduate school told him to transfer out of UTMB before the end of 2007, and that he agreed to do so. (Docket Entry No. 1, p. 11). Fan then states: "In the Fall of 2007 I am a full course student who is rather productive, thus I have no time to process my transfer out." *Id.*

Fan can allege neither a substantive nor procedural due process claim. Nor can Fan allege an equal protection claim. Fan describes the numerous decisions made by the UTMB faculty as violations of the "Equal Opportunity Act" and "a kind of abuse on me for academic excellence." Fan appears to claim that his constitutional right to equal protection was violated because: (1) he received two "unsatisfactory" grades; (2) he was expelled from graduate school; and (3) his SEVIS classification was changed after he was expelled. Fan does not allege discrimination based on his membership in a particular class. Rather, Fan's complaint is based on his claim that he was individually singled out for unfair treatment - that he is a "class of one." *Wheeler v. Miller*, 168 F.3d

214, 251 (5th Cir. 1999).  Such a claim requires that he allege facts showing that he was treated differently than other, similarly situated individuals and that there was no rational basis for the treatment.  *Id*. at 252.  Fan has not alleged the necessary facts.  He has not alleged that there were other students in the program who failed to procure a laboratory when he was told to; failed to process his transfer papers when he was told to; or failed to maintain grades above "unsatisfactory," and was not similarly disciplined.  Facts that Fan does allege show that the decisions he challenges had a rational basis.  Fan cannot allege an equal protection claim.

III.   **Conclusion**

The motion to proceed *in forma pauperis* is granted.  The claims against Brewer are frivolous and are dismissed, without leave to amend.  The proposed claims against the additional defendants are also frivolous and leave to amend is denied.  The motions for default are denied.  All remaining motions are denied as moot.

"When all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims."  *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).  The state-law claims are dismissed, without prejudice.

SIGNED on June 17, 2009, at Houston, Texas.

Lee H. Rosenthal

Lee H. Rosenthal
United States District Judge

16